165 So.2d 361

**STANDARD OIL COMPANY**

v.

**Murray L. JOHNSON.**

**2 Div. 433.**

Supreme Court of Alabama.

May 28, 1964.

David J. Vann, White, Bradley, Arant, All & Rose, Birmingham, for appellant.

Richard L. Jones, Birmingham, and P. M. Johnston, Aliceville, for appellee.

COLEMAN, Justice.

This is an appeal by defendant from judgment for plaintiff in action for fraud based on principles stated in § 108, Title 7, Code 1940, which recites:

"§ 108. (8049) (4298) . . . . Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud."

Errors complained of are that the court erred in: rulings on demurrers to certain pleadings, refusing affirmative charges for defendant, refusing a charge requested by defendant, and overruling defendant's motion for new trial.

■ Assignments 13 and 15 recite:

"13. The verdict of the jury and the judgment of the Court thereon *is* contrary to the preponderance of the evidence in the case. (R. 30)"

"15. The verdict of the jury and the judgment of the court thereon *is* contrary to the legal evidence in the case. (R. 30)"

These assignments allege no error committed by the trial court and are insufficient to present any question for review. Thomas v. Brook, 274 Ala. 462, 149 So.2d 809, and cases there cited.

■ Assignments 17 and 18 recite:

"17. The verdict of the jury and the judgment of the Court thereon *is* contrary to the law of the case. (R. 30)"

"18. The verdict of the jury and the judgment of the Court thereon *is* contrary to the law of the case as expressed by the Court in its oral charge and in the Appellant's requested written charges as read by the Court to the jury. (R. 30, R. 201–208)."

Such assignments of error raise nothing for review. Thomas v. Brook, supra.

In brief outline, plaintiff charges that defendant furnished to its distributor a tank mounted on a truck; that plaintiff was employed by defendant's distributor to deliver petroleum products to customers; that plaintiff, with defendant's knowledge and consent, used the tank for making deliveries to customers; that defendant represented to plaintiff that the tank had a volume capacity of 1066 gallons; that said representation was false in that said tank had a capacity of 1069 gallons; that, as a proximate consequence of the misrepresentation, plaintiff was caused to pay to defendant for alleged shortages $2,000.00, was accused of theft and embezzlement, suffered injury to his reputation, suffered impairment to his credit, was caused to lose his employment, and his employability was impaired.

The case was submitted to the jury on Count A which recites:

"Count A

"The Plaintiff claims of the Defendant Ten Thousand ($10,000) Dollars damages for that heretofore in, to-wit, November, 1950, and continuously therefrom to the date of this complaint, Defendant represented to Plaintiff that a certain petroleum products delivery tank, property of the Defendant and used by the Plaintiff with the knowledge and consent of the Defendant, had a volume capacity of 1066 gallons; that Defendant acted on said representation in that he relied upon said represented volume capacity in gauging the sale and delivery of petroleum products to wholesale and retail customers;

"That heretofore, in to-wit: December, 1949, the Plaintiff was employed under a contract or arrangement of employment by A. T. Owings, agent of the Defendant, who was then and there acting in the line and scope of his employment as a Standard Oil product distributor, as a tank truck driver of a petroleum products delivery truck whereby the Plaintiff and said A. T. Owings agreed to share equally in the profits derived from the sale of petroleum products to wholesale and retail customers from the tank truck driven by Plaintiff, the Plaintiff was to be held accountable for any and all shortages

of money or products, the Defendant was to furnish a properly gauged and calibrated tank and accessories to hold and transport such petroleum products, the Defendant was to well and truly audit, and the said A. T. Owings was to furnish the chassis of the delivery truck on which such properly gauged and calibrated tank and accessories of the Defendant was mounted or to be mounted. The Defendant had knowledge of and acquiesced in the Plaintiff's said contractual relationship. That Defendant represented that it did have peculiarly appropriate facilities for performing such gauging, calibration and audit functions and that Plaintiff relied on such representations.

"That said representation was false in that said tank had a volume capacity of 1069 gallons.

"That as a proximate consequence of ·said misrepresentation by the Defendant the Plaintiff was injured and damaged as follows: He was caused to pay to the Defendant for alleged shortages large sums of money, to-wit: Two Thousand ($2,000) Dollars; he was accused of theft and imbezzlement; he suffered injury to his reputation; he was embarrassed, humiliated and chagrined; he was caused to borrow large sums of money at a high rate of interest; his credit was impaired; he was caused to lose his employment and his employability was impaired; all to Plaintiff's damage in the sum of Ten Thousand ($10,000); hence this suit."

Assignment 7 is that the court erred in overruling defendant's demurrer to Count A. Defendant does not specify which ground of demurrer was good, but its argument appears to be in support of Ground 19 which recites that "it does not appear that Plaintiff and the Defendant were opposite parties in any legal relationship which would subject the Defendant to liability under the facts alleged in the complaint."

Defendant's argument is that, "The innocent mistake provisions of Title 7, § 108, are unusual; they apply only where the parties are 'opposite parties.'" and that here there was no contractual or employment relationship such as to give rise to such a high degree of responsibility.

Neither the statute nor the cases cited, as we understand them, require that, in order to recover under § 108, Title 7, for damage .caused by misrepresentation made by mistake and innocently, the deceived party must be in a contractual or employment relation to the defendant. We are of opinion that the statute does not make, between misrepresentations made wilfully to deceive and misrepresentations made by mistake and innocently, the distinction which defendant now contends for. We do not think an employment or contractual relation is essential in either case.

"An unbending rule can not be laid down for all cases, where, upon the representations of an uninterested person, one trusts another, and suffers loss. Much must depend on the circumstances of the particular case." Einstein v. Marshall, 58 Ala. 153, 163. In the Einstein case, the defendant had no employment or contractual relation with the injured party. There defendant had written a letter representing that a merchant was good for several hundred dollars of credit and that was the representation charged to be false. The opinion indicates that the defendant would be liable if the representation was knowingly false or was made recklessly without the maker knowing whether it be true or false, and acted on to plaintiff's loss.

In another case, this court said:

"   .   .  .. Under section 8049 (§ 108, Title 7) the misrepresentation must be of material fact, made to be relied upon as an inducement, and must be relied upon to the injury of the other party. In such case an intent to deceive is not essential." (Par. Supplied.) Cartwright v. Braly, 218 Ala. 49, 52, 117 So. 477, 480.

According to the allegations of Count A, the misrepresentation of the ca-

.pacity of the tank was the misrepresentation of a material fact; the tank was the property of defendant and was used by plaintiff, with defendant's knowledge and consent, to deliver petroleum products under an agreement between plaintiff and defendant's agent. We think these allegations sufficient to show that the alleged misrepresentation was made to be relied upon by plaintiff and as an inducement to plaintiff, and that plaintiff did, in making delivery of petroleum products, rely on the representation to his injury. Accordingly, we hold that the demurrer to Count A was overruled without error.

To the complaint, defendant pleaded the general issue; that plaintiff consented to the injuries for which damages are claimed; estoppel; the statutes of limitation of one, three, and six years; and the statute of limitation of one year from the date of discovery of the fact alleged to constitute fraud, § 42, Title 7, Code 1940, which recites:

"§ 42. In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his suit."

The court overruled plaintiff's demurrers to all pleas except the plea of estoppel, Plea 4. The court sustained plaintiff's demurrer to Plea 4 and this ruling is Assignment 9. Plea 4 recites:

*"PLEA FOUR*

"The monies alleged to have been paid to the Defendant were paid by the Plaintiff, more than 6 years prior to the filing of this suit upon the representation to the Defendant by the Plaintiff that the Plaintiff had misappropriated for his own use an equivalent amount of funds and gasoline, the property of Defendant, and that such misappropriations had been deliberately concealed from the Defendant through the reporting of fictitious inventories to the Defendant and by the transmission of checks by the Plaintiff to the Defendant, for which Plaintiff knew there were no funds on deposit in the bank upon which the checks were drawn at the time such checks were sent to the Defendant. The Defendant further avers that the amount of monies paid Defendant were computed on the basis of records maintained by the Plaintiff on which Defendant had a right to rely and upon which it did rely. The Defendant further alleges that it accepted said monies against accounts of Plaintiff's employer, A. T. Owings, which are now barred by the statute of limitations. The Plaintiff in, to-wit, October, 1954, deliberately destroyed, by burning, all evidence of his falsification of records so as to make it impossible for the Defendant to prove the false nature of such records in this proceeding. The Defendant further alleges that, by reason of the matters herein, the Plaintiff is estopped to deny the foregoing representations relied upon by the Defendant, and is not entitled to recover in this suit."

Neither party cites authority which is in point on the question of the sufficiency of Plea 4. Plaintiff does not point out which ground of demurrer to Plea 4 is a good ground. Possibly the learned trial court sustained the demurrer to Plea 4 on Grounds 9 and 12 of plaintiff's demurrer to the pleas. These grounds recite as follows:

"9. For that it affirmatively appears from the pleadings that any misconduct alleged by the Defendant on the part of the Plaintiff was caused by its own misrepresentations."

"12. For that the alleged admission of the Plaintiff that he made false records and that he admitted unlawful and dishonest conduct would not as a

matter of law estop Plaintiff from maintaining this action."

No other ground of demurrer applicable to Plea 4 appears to be well taken.

It may be conceded, at this stage of the pleading, that the allegations show that plaintiff's shortages were the result of defendant's misrepresentation as to the capacity of the delivery tank; but we are not able to affirm that the allegations show that plaintiff's alleged admissions that he had misappropriated defendant's funds and property, concealed his misappropriations by fictitious reports and checks which were not drawn on accounts on which plaintiff was entitled to draw, or destroyed his own records, were also the result of defendant's misrepresentation of the capacity of the tank. These acts of plaintiff were not, as we understand Count A and Plea 4, shown to be the result of the misrepresentation of the tank's capacity but were alleged to be plaintiff's own voluntary acts. This court has said:

> "One of the accepted definitions of an estoppel is: 'It is called an estoppel or conclusion, because a man's own acts or acceptance stoppeth or closeth up his mouth to allege or plead the truth.' (Citations Omitted.)
>
> "And, acts and conduct without words, if calculated to mislead and do mislead furnish a basis for an estoppel, without regard to the intention of the actor. (Citation Omitted.)" Woodmen of the World Life Ins. Soc. v. Greathouse, 242 Ala. 529, 531, 7 So.2d 89, 91.

In Plea 4, defendant asserts that plaintiff had made representations to defendant who relied on them to defendant's hurt. If plaintiff, voluntarily, made representations to defendant and defendant acted on them to its prejudice, we do not think plaintiff can later be permitted to say that his representations were not true. We are, therefore, of opinion that the court erred in sustaining the demurrer to Plea 4.

To defendant's pleas, plaintiff filed three replications; to wit, a joinder of issue on the pleas and special Replications 2 and 3. Special Replication 3 recites as follows:

> "3. Plaintiff avers that his suit in this cause is brought within one year of the discovery of facts constituting the fraud upon which relief is sought and that said fraud was discovered under the following circumstances:
>
> "The plaintiff observed by a physical inspection of the said delivery tank, number 5095, which the plaintiff had used from, to-wit: November, 1950, to, to-wit: October, 1954, as hereinabove set out, and which was still in use by the defendant on said date, that some time between the date of the last mentioned audit, to-wit: October, 1954, and the time of plaintiff's inspection of said delivery tank, in, to-wit: April, 1960, that the compartments of said delivery tank had been re-calibrated so that the total volume capacity as shown by the corrected calibration was 1069 gallons as compared to 1066 gallons as certified by the defendant during the time the plaintiff was using said delivery truck. That immediately upon plaintiff's discovery of such corrected calibration as aforesaid, plaintiff procured all available books and records pertaining to plaintiff's deliveries of gasoline and other petroleum products for the entire period of plaintiff's employment, as aforesaid, and that from said records, plaintiff determined that the variation in certified calibration of defendant's tank, from 1066 gallons to 1069 gallons, accounted for substantially all the alleged shortages charged against plaintiff from to-wit: November, 1950, until the termination of plaintiff's employment, as aforesaid, whereon, without delay, in to-wit: April, 1960, plaintiff returned said books and records to the said A. T. Owings, agent of the defendant, orally called the attention of said Owings to plaintiff's said determination there-

from, and requested said A. T. Owings as agent of defendant to notify defendant of the foregoing facts. That in compliance with such request, said A. T. Owings did write a letter to the defendant sometime during the latter part of April, 1960. After the writing of said letter, said A. T. Owings, as agent of defendant, acting within the line and scope of his employment, disclosed to plaintiff that defendant, in its reply to said letter, had reprimanded said agent for allowing plaintiff access to said books and records, and asked said agent to find out from the plaintiff what it would take to satisfy plaintiff's claim in this connection. Said agent suggested that the plaintiff communicate directly with the defendant's Birmingham office. Following such suggestion the plaintiff wrote the defendant a letter under date of April 30, 1960, a copy of which letter is attached hereto and marked Exhibit 'A' and made a part of this pleading as though the same was set out herein in full. When no reply to said letter was forthcoming within a reasonable time, the plaintiff wrote the defendant a second letter under date of May 21, 1960, a copy of which is attached hereto and marked Exhibit 'B' and made a part of this pleading as though the same were set out herein in full. In reply thereto plaintiff received a letter from the defendant under date of May 24, 1960, a copy of which is attached hereto and marked Exhibit 'C' and made a part of this pleading as though the same were set out herein in full.

"That plaintiff, after receipt of said letter attached hereto as Exhibit 'C', and during the remainder of May, June, July, August and September, 1960, relied on defendant's statements therein, 'Tank was re-gauged after it was mounted on another truck. Tank gauges frequently change when put on a different truck,' * * *, and was misled thereby and prevented by such reliance and misleading from in-

stituting further inquiry. That plaintiff had a right to rely thereon. That plaintiff continued in full reliance on defendant's said statements and on the good faith of defendant, until, to-wit: October, 1960, when plaintiff was informed of the contents of a letter dated September 26, 1960, purportedly prepared by one Douglas Arant of the law firm of White, Bradley, Arant, All & Rose, as attorney for the defendant, and addressed to Mr. B. G. Robison, Jr., (then acting as plaintiff's lawyer) a copy of which letter is attached hereto and adopted as a part hereof as though same were set out herein in full, and marked Exhibit 'D'. That, in, to-wit: October, 1960, on being informed of the contents of said Exhibit 'D', Plaintiff was put on notice that defendant was not relying on honest facts as to calibration of said tank number 5095, but contrariwise, was relying on statements procured by defendant from plaintiff, in, to-wit: October, 1954, under coercion and threats as aforesaid. That plaintiff, forthwith was put on notice by said Exhibit 'D' that defendant was relying on statements secured from plaintiff by the defendant by coercion, as aforesaid, and which said statements were based on plaintiff's reliance on defendant's certified calibration of said tank number 5095, and on defendant's audits, on which plaintiff had a right to rely, and that defendant was not relying on or seeking to ascertain the true facts, plaintiff instituted further inquiry and discovered that whereas said Exhibit 'C' had misled plaintiff to believe that said tank was re-gauged contemporaneously with its mounting on another truck, said tank was, in fact, re-gauged in, to-wit, February, 1957, after having been mounted on another truck in, to-wit, 1955; and that alleged shortages, substantially conformable to the alleged shortages charged against plaintiff, as aforesaid, in comparison of the volume of product delivered dur-

ing the period from, to-wit: November, 1950, to, to-wit: October, 1954, with such volume delivered during the period from to-wit: October, 1954, to, to-wit: 1957, continued until such regauging in, to-wit: 1957. That such discovery was made in, to-wit: October, 1960. That in, to-wit: October, 1960, plaintiff further discovered on inquiry to others engaged in like business, that whereas tank gauges sometimes do change when put on a different truck, such variation is invariably a decrease in properly gauged and calibrated volume rather than an increase. And plaintiff further avers that at said time last mentioned he also discovered that said tank was in the same condition, and of the same size and mounted on the same type vehicle as the tank that defendant represented to plaintiff as containing 1066 gallons as aforesaid."

The exhibits referred to recite in pertinent part as follows:

"EXHIBIT 'A'

"Carrollton, Alabama
"April 30th, 1960

" . . . . . . . . . . . . . . . . . . . . . .

"Dear Mr. McDonal:

"While working on a Standard Oil Truck for Standard Oil Co., Carrollton, Alabama, Mr. A. T. Owings Agt. from November, 1950 through Oct. 1954, I drove a truck with Tank #5095 which had been gauged in Birmingham to hold gas as follows:

"Compartment # 1 was supposed to hold 261 gallons
"Compartment # 2 " " " " 267 "
"Compartment # 3 " " " " 216 "
"Compartment # 4 " " " " 162 "
"Compartment # 5 " " " " 160 "

"I have recently learned that this gauge was later found to be incorrect. Compartments #1, 2, and 4 really held one extra gallon each which made me check short 3 gallons on each load that I sold.

"This error in your check of the gauge on the tank caused me to show a large shortage over the 4 years and I had to pay this shortage out of my own pocket.

"Please check your records and see exactly how much refund is due me and send me a check for the amount due me plus compound interest at 6%.

"Sincerely
"Murry L. Johnson"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"EXHIBIT 'B'

"Carrollton, Ala.
"May 21st, 1960
" . . . . . . . . . . . . . . . . . . . . .

"Dear Mr. McDonald:

"I wrote you on April 30th about the stock loss and as of this date I haven't heard a word from you or from Mr. Owings. I don't believe it takes that long to check the records for it only took me two days.

"I believe you will agree that the company owes me the little that I am asking for. You know that the amount I'm asking for is only a drop in the bucket of what it has cost me. You know that your man made the error when he gauged the tank and that is the back bone of all the shortage.

"I am looking forward to hearing from you by May 27th or I will have to turn this over for a law suit, and when I do that will have to take into consideration all the slander and the hardship it has caused me.

"Sincerely,

"Murry L. Johnson"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"EXHIBIT 'C'

"May 24, 1960

"Mr. Murray Johnson
"Carrollton, Alabama

"Dear Sir

"Reference yours of May 21st.

"We cannot agree with you that error was in the gauging. Tank was regauged after it was mounted on another truck. Tank gauges frequently change when put on a different truck.

". . . . . . . . . ."

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"EXHIBIT 'D'

"September 26, 1960

". . . . . . . . . . . . . . . . .

"Dear Mr. Robison:

"Your letter dated September 23 has been received. This shortage did not accrue by reason of any over measure of the truck tanks. We have a statement which Mr. Johnson himself signed in which he states that the shortage which he paid had been applied to his personal use and that he acknowledged full responsibility for the shortage.

". . . . . . . . . . ."

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The plaintiff is Murray L. Johnson, sometimes spelled Murry L. Johnson. The complaint was filed June 30, 1961.

Assignment 12 is that the court erred in overruling defendant's demurrer to Replication 3.

Defendant argues that five grounds of demurrer to the replication were well taken. Those grounds and defendant's argument are to effect that Replication 3 is not a good answer to the plea of the statute of limitation of one year from the date of discovery of the fact alleged to constitute fraud, in that the allegations of Replication 3 neither traverse, confess and avoid, nor present matter of estoppel as to said plea. Defendant cites Burnett & Bean v. Miller, 205 Ala. 606, 88 So. 871, where this court said:

"A replication must either traverse or confess and avoid the matter pleaded, or present matter of estoppel thereto. (Citations Omitted.) . . . ." (205 Ala. at page 607, 88 So. at page 872)

Plaintiff states in brief that the legal question here is did plaintiff's discovery, in April, 1960, of the change in calibration, commence the running of the statute, or did the running of the statute commence in October, 1960, when plaintiff "learned for the first time that the matters contained in the Defendant's letter of May 1960 were not true?"

Plaintiff states in brief:

". . . . We readily concede that if the Defendant had remained completely silent, or if their letter of May 21, (sic) 1960, had contained only the first two sentences, (that is, if this letter had omitted the last two sentences), the Statute of Limitations would undoubtedly have run on Johnson's claim in April, 1961.

"The fact is, however, that the Defendant's letter did contain the last two sentences; and the only reasonable interpretation which can be made from the total of this letter is that Johnson was being told, as a fact, that at the time of the change of the tank from one truck to another, the tank was regauged and the change in gauge was made at that time. For the Defendant to say in one sentence that the tank was regauged *after* it was remounted on another truck, and then to follow that statement by saying that tank gauges frequently change *when* put on another truck, could only be calculated by reasonable men to result in one interpretation—and this was the interpretation which plaintiff made of this letter.

". . . . . . . . . . . . . . . . . . . .

"It was not until a second letter from the Defendant's attorney in September, 1960, that the Plaintiff realized that the Defendant no longer claimed that the change in gauge occurred with

the change in the tank from one truck to another, but instead relied upon the Plaintiff's own signed statement as its defense. Only then was the Plaintiff put on inquiry to determine the true facts. In October, 1960, immediately following the abovementioned second letter, the Plaintiff learned for the first time that the tank was changed from one truck to another in the latter part of 1955, and that the tank was not regauged until sometime in 1957, and at the time of the regauge in 1957, there was no change whatsoever made in the mounting of the tank. All of these facts were within the peculiar knowledge of the Defendant. They knew each of these facts in detail and when they took it on themselves to make representation of facts to the Plaintiff and the Plaintiff had a right to rely upon these representations as true."

Plaintiff's argument is to effect that defendant's letter of May 24, 1960, falsely led plaintiff to believe that the tank had been recalibrated contemporaneously with the remounting of the tank on another truck. We are unable to agree that Replication 3 shows that the letter is false in this respect. Even if it be conceded that plaintiff was led to believe that recalibration and remounting were contemporaneous, we fail to see how the inducing of this belief in plaintiff would toll the statute of limitation of one year after discovery "of the fact constituting the fraud."

■ The fact constituting the fraud is alleged in the complaint to be the false representation that the tank held 1066 gallons when it really held 1069 gallons. Plaintiff's entire case rests on the proposition that this false representation proximately caused his injury. In Exhibit A to Replication 3, by letter dated April 30, 1960, plaintiff stated that he had learned that the tank gauging was incorrect and "made me check short 3 gallons on each load that I sold."

Plaintiff was fully advised of the fact constituting the fraud on April 30, 1960, the day he wrote the letter. As plaintiff admits in brief, if defendant had remained silent, the statute would have run. We do not think that defendant's letter of May 24 tolled the statute, and are of opinion that Replication 3 is not a sufficient answer to the plea of the statute of limitation of one year after discovery of the fact constituting the fraud, and hold that the court erred in overruling demurrer to Replication 3.

■ Assignment 6 asserts that the court erred in refusing defendant's requested Charge 25 which recites:

"25. If tank truck gauges do in fact frequently change when a tank is transferred from one truck to another as shown to your reasonable satisfaction by the evidence in this case, you cannot return a verdict for Plaintiff Under Count A."

Charge 25 was refused without error for two reasons:

First, the allegation in Replication 3 is that " . . . . whereas tank gauges sometimes do change . . . . " and not " . . . . frequently change . . . . ," as stated in Charge 25.

Second, Charge 25 unduly singles out and emphasizes a particular fact and tends to obscure and minimize other material evidence bearing on the same question.

" . . . . The court is not required to give a charge which unduly singles out and emphasizes the testimony of any particular witness or any particular facts, and which tends to obscure and minimize other material evidences bearing on the same question, and a charge is argumentative in its character which directs the jury to look to certain facts as tending towards certain conclusions. (Citations Omitted.) . . . . " Steed v. Knowles, 97 Ala. 573, 581, 12 So. 75, 80.

■ In Assignments 4 and 5, defendant asserts that the court erred in refusing

affirmative charges, with and without hypothesis, requested in writing by defendant.

Supreme Court Rule 9 provides that, " . . . . if the insufficiency of the evidence to sustain the verdict or finding, in fact or law, is assigned, then the statement (of facts) shall contain a condensed recital of the evidence given by each witness in narrative form bearing on the points in issue so as to fully present the substance of the testimony of the witness clearly and concisely . . . . " (Par. Supplied.)

Defendant, in brief, has not only failed to set out a condensed recital of the evidence given by each witness; defendant has altogether omitted from its brief a section under the heading "Statement of the Facts." It is true that defendant has undertaken, under the heading "Statement of the Case," to set out some parts of the evidence, but that section is not the place for reciting the evidence in narrative form. Moreover, defendant's statement of the evidence is argumentative. The place in brief for argument is under the heading "Argument."

The transcript of evidence covers 178 pages, typewritten in Elite type. The reporter's certificate refers to the cause as being heard on two days, "January 23–24, 1962."

Appellant having refrained from making a recital of the evidence in compliance with Rule 9, we will not attempt to recite the facts which, in our view, justified submitting the case to the jury. Case v. O'-Shields, 30 Ala.App. 254, 4 So.2d 202; Lamar Life Insurance Company v. Kemp, 30 Ala.App. 138, 1 So.2d 760; Limbaugh v. Comer, 265 Ala. 202, 90 So.2d 246; Woodward Iron Company v. Stringfellow, 271 Ala. 596 [2], 126 So.2d 96; Case v. Ward, ante p. 242, 160 So.2d 859.

In the Stringfellow case, with respect to an assignment of error based on refusal of an affirmative charge requested by defendant, this court, referring to the above quoted provision of Rule 9, said:

" . . . . Appellant's brief does not meet this requirement. Consequently, we are constrained to hold that assignments 3 and 15 have been waived. It is to be noted that, with respect to assignment 15, the argument is that the evidence failed to make out a case for the plaintiff." (271 Ala. at page 597, 126 So.2d at page 98)

The reason for this holding has been stated as follows:

" . . . . 'It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. It is not the province of a reviewing court to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to the appeal. [Citing cases.] Where an appellant claims that some particular issue of fact is not sustained by the evidence, he is required to set forth in his brief all of the material evidence on the point and not merely his own evidence. If this is not done, the error assigned is deemed waived.' . . . . " Slovick v. James I. Barnes Construction Co., 142 Cal.App.2d 618, 298 P.2d 923, 927

Defendant can take nothing by Assignments 4 and 5 in the case at bar.

Assignment 19 charges error in overruling defendant's motion for a new trial. In argument of this assignment, defendant merely refers to propositions which have already been considered and it thus appears that further consideration of this assignment is unnecessary.

For errors in sustaining demurrer to Plea 4 and overruling demurrer to Replication 3, the judgment is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.