514 So.2d 786 (1986)
Troy E. HOPKINS, Sr., and Augusta P. Hopkins
v.
LAWYERS TITLE INSURANCE CORPORATION and Realty Title Company of Mobile, Inc.
84-293.
Supreme Court of Alabama.
May 30, 1986.
Rehearing Denied September 4, 1987.
Charles H. Durham III and Richard G. Alexander, of Alexander and Knizley, Mobile, for appellants.
Dewit Reams, Robert E. Clute, Jr., and Patricia K. Olney of Reams, Vollmer, Philips, Killion, Brooks & Schell, Mobile, for appellee Lawyers Title Ins. Corp.
Carroll H. Sullivan of Gaillard, Little, Hume & Sullivan, Mobile, for appellee Realty Title Co. of Mobile, Inc.
ADAMS, Justice.
Plaintiffs, Troy E. Hopkins, Sr., and Augusta P. Hopkins, appeal from a summary judgment by the Circuit Court of Mobile County in favor of defendants-appellees, Lawyers Title Insurance Corporation (hereinafter "Lawyers Title") and Realty Title Company of Mobile, Inc. (hereinafter "Realty Title"). We reverse.
The Hopkinses, through their real estate agent, John Daniel, purchased a lot and house in a subdivision situated in Mobile, Alabama, from Charles E. Hayes.
*787 In 1980 and 1981, a series of floods caused extensive damage to the Hopkinses' house and personal belongings. The Hopkinses brought suit against the City of Mobile, seeking compensation for the flood damage. It was at this time that the Hopkinses were first made aware of a release agreement entered into between the City of Mobile and the developer of the Hopkinses' subdivision. The agreement recited that the property, including the lot now owned by the Hopkinses, was subject to being flooded, and that the developer agreed to waive all rights it, or any successor in ownership, had against the city to recover damages caused by flooding. The agreement was dated October 11, 1974, and was properly recorded in the office of the judge of probate of Mobile County.
Realty Title conducted a title search in conjunction with the Hopkinses' purchase of Hayes's property, and, based upon its search, issued a policy of title insurance on behalf of Lawyers Title. The title policy made no reference to the aforementioned agreement.
On April 6, 1982, the Hopkinses filed a breach of contract suit against Lawyers Title and Realty Title. The Hopkinses' initial complaint alleged that the release agreement was "a defect in or lien or encumbrance on" their title or caused their title to be "unmarketable" under the terms of the Lawyers Title insurance policy, and, therefore, that they were entitled to recover damages as provided for in the policy. Service of the Hopkinses' complaint was perfected on Lawyers Title on April 26, 1982.
By way of an answer filed on December 22, 1982, Lawyers Title avered that the Hopkinses had failed to provide adequate notice of their alleged loss as required by the insurance contract conditions.
On August 15, 1983, the Hopkinses amended their complaint by adding an additional paragraph stating "[T]hat notice was provided to the Defendants of the Plaintiffs' claim by serving, by certified mail, upon the defendants, a written statement of the facts [the original complaint], alleging the Plaintiffs' claim, on April 26, 1982...." The Hopkinses filed a second amended complaint on January 30, 1984, wherein they alleged breach of contract and fraud against Realty Title for Realty Title's failure to list the release agreement as an exception in the policy of title insurance.
The trial court granted Realty Title's motion for summary judgment on the Hopkinses' breach of contract claim on May 4, 1984, finding a lack of contractual privity between the parties, and the Hopkinses do not appeal from that ruling. The Hopkinses appeal from the trial court's subsequent grant of summary judgment in favor of Lawyers Title on the Hopkinses' breach of contract claim and in favor of Realty Title on the Hopkinses' fraud claim.
Three issues are raised on appeal:
1. Did the trial court err in granting Lawyers Title's summary judgment motion based upon a finding that the service of a summons and complaint on Lawyers Title did not constitute compliance with the notice requirement set forth in the policy of title insurance?
2. Did the trial court err in granting Lawyers Title's summary judgment motion based upon a finding that the release agreement was not a defect, lien, encumbrance, or other matter affecting title, or that the agreement made the Hopkinses' title unmarketable, under the terms of the policy of title insurance?
3. Did the trial court err in granting Realty Title's summary judgment motion based upon a finding that there was no confidential relationship or special circumstances between the Hopkinses and Realty Title, and, therefore, no duty on Realty Title to disclose the existence of the release agreement?
The trial court's first ground for granting summary judgment for Lawyers Title was its determination that the service of the Hopkinses' summons and complaint on Lawyers Title was not, under the terms of the title insurance policy, sufficient notice to satisfy the condition precedent to bringing an action against Lawyers Title. We disagree.
*788 The notice provision embodied in the insurance policy and construed by the trial court reads as follows:
4. Notice of LossLimitation of Action
In addition to the notices required under paragraph 3(b) of these Conditions and Stipulations, a statement in writing of any loss or damage for which it is claimed the Company is liable under this policy shall be furnished to the Company within 90 days after such loss or damage shall have been determined and no right of action shall accrue to an insured claimant until 30 days after such statement shall have been furnished. Failure to furnish such statement of loss or damage shall terminate any liability of the Company under this policy as to such loss or damage.
The general rule regarding the sufficiency of compliance with notice of loss provisions in insurance policies is set forth in 44 Am.Jur.2d Insurance, § 1352 (1982):
Provisions for the giving of notice of loss or the furnishing of proofs of loss to an insurer will be liberally construed in favor of the insured, and a substantial compliance therewith, as distinguished from a strict compliance, will suffice. Unless the policy specifically provides otherwise, no particular form of proof of loss is required other than one adequate to enable an insurer to consider its rights and liabilities. No matter what the form of a notice of loss may be, if it operates to bring the attention of the insurer to the loss or accident, sets forth the essential facts upon which the liability of the insurer depends, and appears credible, it is sufficient.
In Equitable Life Assurance Soc. v. Dorriety, 229 Ala. 352, 157 So. 59 (1934), the Supreme Court recognized this general rule when it opined that, unless the policy requires some particular form of proof of loss, any form of proof of loss is sufficient if it provides the insurer with adequate facts to allow the insurer to consider its rights and liabilities under the claim. The notice provision in the instant case does not require any particular form of notice but merely requires "a statement in writing of any loss or damage for which it is claimed the company is liable under this policy...." (Emphasis supplied.) We are of the opinion that the Hopkinses' summons and complaint, which were served on Lawyers Title, is a statement in writing that puts forth sufficient facts to put Lawyers Title on notice of the Hopkinses' claim and would enable the company to consider its rights and liabilities. Furthermore, we find no basis for holding that the use of a summons and complaint is, in itself, an insufficient mechanism for giving notice. In Ex parte City of Huntsville, 456 So.2d 72 (Ala.1984), we held that the filing and service of a lawsuit satisfied the notice requirements of Code 1975, § 11-47-23 and § 11-47-192, which provide for the presentment of claims against municipalities. There exists no sound reason why the service of a summons and complaint would not also meet the notice requirement under the facts of the case at bar.
Lawyers Title argues that the filing of the Hopkinses' lawsuit cannot satisfy the notice provision because giving of notice is a condition precedent to filing suit. Specifically, Lawyers Title relies on the contract provision which states "no right of action shall accrue to an insured claimant until 30 days after such shall have been furnished." We hold that this provision is void by operation of Code 1975, § 6-2-15, which provides in part:
[A]ny agreement or stipulation, verbal or written, whereby the time for the commencement of any action is limited to a time less than that prescribed by law for the commencement of such action is void.
The contract provision above attempts to limit the Hopkinses' time to commence their breach of contract action against Lawyers Title to 30 days, and, therefore, violates § 6-2-15.
The Hopkinses also assert that the trial court erred by holding that the release agreement did not constitute a defect, lien, or encumbrance on the Hopkinses' realty within the terms of the policy of insurance, and therefore that the Hopkinses had no cause of action against Lawyers Title for breach of contract. We agree. The following *789 coverage was provided by the policy of title insurance:
SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against the loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insurance by reason of
1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;
2. Any defect in or lien or encumbrance on such title;
3. Lack of a right of access to and from the land; or
4. Unmarketability of such title....
(Emphasis supplied.)
In Tuskegee Land & Security Co. v. Birmingham Realty Co., 161 Ala. 542, 49 So. 378 (1909), the Court held that a valid contract between a preceding property owner-grantor and a third party in which the property owner-grantor released the third party from liability for possible damages to the property, constituted an "encumbrance" upon the property, and the subsequent conveyance of the property to a purchaser-grantee, without reference to the contract, gave rise to a cause of action against the seller-grantor, by the grantee, for breach of a covenant against encumbrances embodied in the grantee's deed.
As an "encumbrance," the release agreement in the instant case comes squarely under the coverage of the title insurance policy and the Hopkinses are entitled to maintain an action for breach of that policy. The trial court erred by granting summary judgment for Lawyers Title.
We are also of the opinion that the trial court erred by granting summary judgment in favor of Realty Title. The Hopkinses concede in their brief that their sole claim against Realty Title is fraud for failing to disclose the existence of the release agreement. Fraud predicated upon the suppression of a material fact is governed by Code 1975, § 6-5-102, which provides:
Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.
The Court in Metropolitan Life Ins. Co. v. James, 238 Ala. 337, 341, 191 So. 352, 355 (1939), construed the predecessor to § 6-5-102 as follows:
This statute is declaratory of the common law. In dealings between persons standing in confidential relations or positions of trust, the law imposes an obligation on the part of the one to safeguard the interests of the other with the same fidelity he safeguards his own, and charges him with knowledge of such duty. Withholding facts, material to be known, is a breach of such legal duty, regardless of intent to deceive, and is a legal fraud.
When the circumstances of the particular case impose a like duty, the same rule obtains. So reads the statute. In the absence of confidential relations or special circumstances imposing a like duty, the rule seems settled that non-disclosure of facts to be fraudulent must be for purposes of deceit.
See also Chapman v. Rivers Construction Co., 284 Ala. 633, 227 So.2d 403 (1969).
The trial court, in the case at bar, held that Realty Title had no duty to communicate the existence of the release agreement to the Hopkinses because the facts did not give rise to a confidential relationship or special circumstances. Having thoroughly examined the record before us, we find at least a scintilla of evidence to support the Hopkinses' fraud claim, and we are of the opinion that the trial court erred by granting summary judgment.
Although there is no evidence of active concealment by Realty Title, or the existence of a confidential relationship between *790 Realty Title and the Hopkinses, the facts of this case may give rise to a finding of "special circumstances" imposing upon Realty Title a duty to speak. Whether a duty to speak arises depends upon the relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances. Berkel & Co. Contractors v. Providence Hosp., 454 So.2d 496 (Ala.1984). The determination of the existence of duty in this context is a question for the jury. See Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83 (Ala.1980); Jim Walter Homes, Inc. v. Waldrop, 448 So.2d 301 (Ala.1983).
As regards the relationship between the Hopkinses and Realty Title, the trial court relied upon the fact that there was no contractual relationship or direct dealings between these parties in finding that Realty Title had no legal duty to disclose the existence of the release agreement to the Hopkinses. Contrary to the trial court's conclusion, our cases are to the effect that a duty in a fraud action may exist in the absence of a contractual relationship or without dealing between the parties. See Berkel & Co. Contractors v. Providence Hospital, supra; Standard Oil Co. v. Johnson, 276 Ala. 578, 165 So.2d 361 (1964); Mid-State Homes, Inc. v. Startley, 366 So.2d 734 (Ala.Civ.App.1979). Each case rests upon its own facts. Standard Oil Co. v. Johnson, supra. In the instant case, deposition testimony reveals that the seller, Hayes, at the request of the Hopkinses' real estate agent, Daniel, asked his real estate agency, Roberts Brothers Realtors, to obtain a title binder and title insurance policy. Roberts Brothers retained Realty Title to perform the title search and issue the policy of insurance. Realty Title was obligated to list all encumbrances and other matters affecting title. Realty Title prepared the title binder and issued the Lawyers Title insurance policy without listing the release agreement as an exception. The Hopkinses were the named insureds under the policy. Moreover, Realty Title's agent, George Williams, testified that the title search regarding the Hopkinses' property was conducted for the benefit of all parties to the transaction. The relationship between Realty Title and the Hopkinses in this case is sufficient to impose a duty on Realty Title to disclose the release agreement.
Additionally, the Hopkinses, as purchasers, were concerned with the existence of liens, encumbrances, or other matters that affected the title to the property, including the release agreement. The existence of the release agreement, an encumbrance, could be a valuable fact relating to the Hopkinses' purchase of the real estate.
There is also evidence that supports a finding that Realty Title had superior knowledge of the release agreement. Williams testified that the release agreement was not listed as an exception because the title searcher either determined that it was not necessary to include it or did not discover it. Also, the record shows that several earlier policies issued by Realty Title on other lots in the Hopkinses' subdivision listed the release agreement as an exception. It is also evident that Realty Title has expertise in searching titles not shared by the Hopkinses. These facts could support a finding of actual knowledge of the agreement on the part of Realty Title above that knowledge that might be constructively imputed to both parties based upon the recording of the agreement. Because of Realty Title's possible actual knowledge of the release agreement and expertise in dealing with title matters, the relative positions of the parties were not equal.
The foregoing factors constitute genuine issues of material fact regarding duty and preclude summary judgment on the Hopkinses' fraud claim in favor of Realty Title in this case.
Although the evidence before us may be sufficient to support a finding of legal fraud, a finding of legal fraud in this context will not automatically give rise to a consideration of punitive damages by the jury. From what appears in the record before us, one could not conclude that the omission was made with an intent to deceive. Punitive damages will not lie without evidence to support such a finding. Big Three Motors v. Employer's Ins. Co., *791 449 So.2d 1232 (Ala. 1984); St. Paul Fire & Marine Ins. Co. v. Anderson, 358 So.2d 151 (Ala.Civ.App.1977).
The judgment of the trial court is reversed and the cause remanded.
REVERSED AND REMANDED.
JONES, SHORES and STEAGALL, JJ., concur.
TORBERT, C.J., concurs in the result.

ON APPLICATION FOR REHEARING
ADAMS, Justice.
APPLICATION OVERRULED.
JONES, SHORES and STEAGALL, JJ., concur.
TORBERT, C.J., concurs in the result.
TORBERT, Chief Justice (concurring in the result).
After carefully studying the application for rehearing, I am convinced that the notice clause of the Lawyer's Title policy did not violate Code 1975, § 6-2-15.
The contract is an insurance policy. The insurer agrees to compensate the insured for any loss resulting from a defect, lien, or encumbrance on the insured's title that has not been excluded from coverage. The insurer has the option to either pay any loss that arises or to clear the defect, lien, or encumbrance on the title. If the insurer fails to act on a compensable claim, then the insurer has breached the contract.
Under the policy at issue, there was no affirmative obligation for Lawyer's Title to list all encumbrances on the policy. On the contrary, the policy provides that Lawyer's Title "insures ... against loss or damage... sustained or incurred by the insured by reason of: ... "2. Any defect in or lien or encumbrance on such title...." Schedule B excludes from insurance coverage any "loss or damage by reason of the following." Schedule B then sets forth various items that could be defects, liens, or encumbrances. Nowhere in the contract is there any promise to actually set out all defects, liens, or encumbrances. Therefore, the only possible cause of action for breach of contract against Lawyer's Title is for the failure to pay a claim for damages resulting from a defect, lien, or encumbrance that was not excluded from coverage. Plaintiffs allege just such a breach in counts one and two of the second amended complaint.[1] The plaintiffs allege that "while they [plaintiffs] have complied with all the terms and conditions of said insurance policy, the defendants have breached the terms thereof by failing to pay to the plaintiffs the amount due pursuant to the terms of the policy."
The significance of the above is simply this: Lawyer's Title could not have breached the insurance contract for failing to pay for damages that resulted from the existence of a non-excluded encumbrance until it had knowledge of a claim and failed to pay it.
The first notice Lawyer's Title had of a claim was when it was served with the original summons and complaint. The notice clause provided that the insurer then had 30 days in which to act on the claim after notice was given. The insurer uses this period of time to process and evaluate the claim to see if it is compensable. As shown by this case, where the trial court and this Court came to different conclusions, there can be some legitimate debate about whether an agreement of the type in question is an encumbrance and therefore covered under the policy. The clause simply gives the insurer 30 days in which to perform, just as in a commercial sales contract a buyer may have up to 30 days to pay after the seller delivers before the buyer is deemed to have breached his promise to pay.
If the insurer refuses to pay a compensable claim or fails to act on a compensable claim within 30 days, the insurer has breached the contract. Until there is a breach, no cause of action has accrued and *792 statute of limitations has not begun to run. Therefore, the notice clause does not shorten the statutory limitations period and does not violate § 6-2-15.
To hold that the clause violates § 6-2-15, the majority must conclude that a breach occurred prior to the time, or simultaneously with the time, that notice of the claim was given. To hold that the breach occurred prior to the time notice of the claim was given to the insurer is to say that the insurer should have compensated the insured for a claim that the insurer did not know existed. If the breach occurs when notice of the claim is given, then the majority must be saying that there is a presumption that the insurer will deny the claim. In addition, if there was a bad faith claim made, I wonder how we would evaluate whether a debatable reason for denying the claim existed at the time (which the majority has a difficult time determining) the claim was denied.
While the service of process of the initial complaint put the insurer on notice of a claim, the suit was technically premature, because no breach had occurred. However, the plaintiffs later amended the complaint after more than 30 days had expired, realleging a breach of contract for failure to pay a claim made under the policy. By the time the second amended complaint was filed, plaintiffs had a viable breach of contract action.
I agree that the application is due to be overruled because we correctly held that the requirements of the clause were met and, therefore, that the insurer could not invoke the clause to bar the claim. Our decision to reverse the trial court's judgment is therefore correct, but not the discussion that states that the notice clause violates § 6-2-15.
NOTES
[1] In contrast, in counts three and four of the second amended complaint, plaintiffs pursue causes of actions against Realty Title for failure to set forth a defect, lien, or encumbrance.