293 So.2d 476

**MID–STATE HOMES, INCORPORATED**

v.

**Robert J. HOLT and Cloro Holt.**

**Civ. 239.**

Court of Civil Appeals of Alabama.

April 17, 1974.

R. A. Norred and E. Elliott Barker, Birmingham, for appellant.

Bingham D. Edwards, Decatur, for appellees.

WRIGHT, Presiding Judge.

This is an appeal from judgment for plaintiff in an action for fraud. Judgment was for $5,000.00, including punitive damages.

The essence of the complaint was that in November of 1964, plaintiffs executed a mortgage on real estate to Jim Walter Corporation, which mortgage was sold and transferred to defendant Mid-State Homes, Incorporated; that monthly payments were made by plaintiffs in the amount of $34.00 for the months of January, February and March, 1965; that on March 25, 1965, defendant by letter to plaintiffs, for the purpose of inducing plaintiffs to become in default on said mortgage, willfully to deceive, or recklessly without knowledge of the truth, represented to plaintiffs that the payments on the mortgage were paid through August, 1965; that plaintiffs relied upon such representation and did not make payments from April through August 1965; that on February 4, 1966, defendant again represented to plaintiffs that payments were paid through January 1966;

that on July 5, 1966 defendant again represented to plaintiff that payments on the mortgage would be current with the payment of the June and July, 1966 payments; that each of the latter two representations were made to induce plaintiffs to remain in default and were made willfully to deceive or recklessly without knowledge; the plaintiffs relying upon such representations did not make the payments due from April 1965 through August 1965 and became and remained in default; that on April 30, 1971, as a result of the default, defendant foreclosed on said mortgage though the foreclosure deed was not recorded. Plaintiffs were caused to undergo vexation and apprehension about the loss of their home; were caused to incur expense in enjoining foreclosure and claimed punitive damages.

The evidence in support of the complaint, in substance, was as follows: After the execution of the mortgage, plaintiffs made three monthly payments thereon. Plaintiffs received the following letter dated March 23, 1965.

"Dear Sir:

"We are writing in reference to your payment of March 15 in the amount of $34.00. Please be advised that this payment has been applied to your account. Your account is now credited through August 15, 1965. "In order to prevent future payments from being misplaced, please be sure that you use one IBM card and envelope for each payment. If you have not received your IBM cards and envelopes, please contact this office and a supply will be forwarded to you.

"May we remind you that your account is paid through August 15th with your next payment due September 15, 1965.

"Respectfully yours,

"Mid-State Homes, Inc.

"J. H. Kelly, Vice-President."

Plaintiffs' testimony was that they had made only the first three payments when

they received the above letter. After its receipt, they did not make payments for five months until September 15, 1965. They thereafter continued making monthly payments.

Plaintiffs again received a letter from Mr. Kelly and Mid-State Homes dated February 4, 1966. This letter referred to a payment of $34.00 made on January 24, 1966. It advised that the payment had been credited to the account and that the next payment was due February 15th.

Plaintiffs next received a letter from Mr. Kelly dated July 5, 1966. This letter stated in substance that Mid-States was in receipt of recent correspondence from plaintiffs with reference to their account. It stated that the record showed the account delinquent for payment due June 15 and that the July payment would be due on the 15th of July. It said it was not the policy of the company to carry delinquent accounts, and that the records were being marked to receive the two payments in full no later than July 15th to bring the account to current status. There cooperation was solicited.

Plaintiffs made the June and July payments and continued payments until January 1971. The January 15, 1971 payment was not made until February 13, 1971. On February 16, 1971, defendant's Mr. Jones, wrote plaintiffs a letter stating in substance that numerous attempts by correspondence and personal contacts had been made to collect past due payments, insurance and taxes due under the terms of the contract; that taxes and insurance that are past due were as much an obligation as monthly payments; with the equity owned in the home, it should be of great concern to plaintiffs that all payments, insurance and taxes be paid as due; that the record indicated that plaintiffs were delinquent $68.00 in payments and $151.00 for insurance; that though immediate legal action could be taken, payment of the delinquency would be allowed within seven days from date of the letter; that such payment was extremely important for plaintiffs to protect their investment; that another $101.00 for insurance premiums should be paid direct to Best Insuror's Inc. A special envelope was enclosed for the payment of the delinquency.

Plaintiffs admitted owing the February 15th payment and the insurance at the time of receiving this letter. The February 15th payment was mailed by plaintiffs on February 26, 1971.

On February 24th plaintiffs were sent the following mailgram from Mr. Jones.

"It is extremely important that you call me collect on Friday 3/5 to discuss your account."

Mrs. Holt called Mr. Jones collect on March 5, 1971. Mrs. Holt stated she told him that the January and February payments had then been made. They discussed the $151.00 insurance due and she told him she would talk to her husband and would send him an airmail letter the next day. She stated Jones told her he was going to take her house and she replied that he would not if she could borrow the money to pay it off and would fight him through court.

On March 6, plaintiffs sent $20.00 on the insurance with the promise to pay every two or three weeks until it was paid if it would be accepted that way. The $20.00 was not returned and no response was made to the offer of payment. The March payment on the house was made on time.

It might be well to state here that Mr. Jones appeared as a witness for defendant and stated that it was during the phone conversation with Mrs. Holt that he secured the proper file and first discovered that there had been a mistake made in the account in 1965 which caused the crediting to plaintiffs' account a $135.00 payment made by another person, which payment should have been credited to that account. As a result of the mistake made by a key punch operator, plaintiffs' account was

credited with the five payments which they had not made. This error was responsible for the letter to plaintiffs of March 23, 1965, and the other subsequent letters failing to mention the five unpaid payments. (This mistake will be discussed later in this opinion).

Plaintiffs next received a letter from defendant's attorney Norred of Birmingham, Alabama, dated March 25, 1971. That letter stated that because of continued default of the mortgage, foreclosure was begun with the sale to be on April 30, 1971 at the Decatur Courthouse. It further stated that foreclosure would be stopped upon payment of the sum of $536.00 received by April 20.

The amount due was itemized as

| Six payments—(Nov. 15– April 15) | $204.00 |
|---|---|
| Ins. added to Led. 1965–69 | 131.00 |
| Del. Ins. | 101.00 |
| Foreclosure Expenses | 100.00 |
| Total | $536.00 |

Several days after receipt of the above referred letter, plaintiffs sent to the defendant's office another payment of $20.00 on the insurance.

Plaintiffs subsequently received copies of the published notices of the foreclosure from several sources. They contacted counsel who filed suit in equity to restrain foreclosure and determine the amount of the mortgage indebtedness. The file of this proceeding was allowed into evidence over objection. The file was complete in that it contained a final decree entered upon agreement of the parties. The agreement was that the mortgage was to be reinstated upon payment by plaintiffs of $111.00 of delinquent insurance, together with all payments due on the mortgage up to the agreement dated November 21, 1971, except the five payments from April through August, 1965. These five payments to be added to the end of the mortgage and paid in equal installments without interest after all other installments were paid.

The suit in equity had been filed on or about April 19, 1971, with a temporary restraining order against foreclosure by defendants being entered the same date. Injunction bond was made by plaintiffs on April 21. Service of the complaint and order was had upon the designated statutory agent of defendant at Montgomery, Alabama, on April 28, 1971. Evidence was allowed over objection by defendant that foreclosure proceeded on April 30, 1971 as advertised, with purchase by defendant and that defendant violated the temporary restraining order. It was shown by defendant that no notice was given to attorney Norred, who had initiated the foreclosure and that efforts to contact him after notice from the statutory agent were unsuccessful. Foreclosure did occur, but the deed was not recorded. The court in the injunction proceeding never considered violation of its temporary order nor took any action thereon. Plaintiffs never complained of such violation in that action which was completed by the agreement stated above on November 21, 1971. The present action was not begun until February 16, 1972.

In response to the evidence of plaintiffs and in support of its plea of the general issue, defendant produced records of its office and testimony of its employees who kept or supervised the keeping of such records as to the error by the key punch operator in 1965, which resulted in the letter of March 23, 1965, advising plaintiffs that their account had been credited with five payments in advance which payments were not made by plaintiffs. The manner in which such error occurred is too involved and complicated to set out without lengthy relation. The fact that such error occurred was supported by substantial documentary and testimonial evidence which was not disputed by contrary evidence. We see no necessity to relate such evidence here. Suffice it to say that the fact of such error was documented even to the extent of showing the name and number of the person and account from which credit was taken and applied to that of plaintiffs.

The evidence as to pecuniary loss to plaintiffs due to the alleged fraud of defendant was the amount of $150.00. This figure represented the expense incurred in securing the temporary restraining of the foreclosure. It was shown that plaintiffs were never dispossessed from their home because of the foreclosure.

This lengthy resumé of the substance of the evidence is considered necessary to our decision.

Appellant has made several assignments of error. The first we will consider is the admission into evidence of the file of the suit brought by plaintiffs against defendant to restrain the foreclosure of the mortgage, and testimony that the defendant violated the restraining order by proceeding with the foreclosure after service upon the statutory agent two days before.

■ We think the court erred in allowing evidence to show violation of the restraining order. Such evidence could have no probative value on the issue of whether the representations made by defendant to plaintiffs by letter in 1965 were made willfully or recklessly without knowledge for the purpose of inducing plaintiffs to become in default on their mortgage. Nor could such evidence be probative to the issue of punitive damages in that the misrepresentation of 1965 was fraud of a gross, malicious or oppressive nature and made with an intent to injure. More than six years had passed from the date of the charged fraud until the date of foreclosure. It is our opinion that such evidence could only be highly prejudicial and inflammatory.

■ In addition, if there was in fact, a violation of the restraining order, such violation was the subject of action by the court issuing the injunction. Only the issuing court was in position to determine whether a violation had occurred and to punish for such violation. To allow a jury in a collateral action to determine the fact of violation and to consider awarding dam-

age to plaintiffs by way of punishment for such violation cannot be allowed. It was stated in the case of Callan v. McDaniel, 72 Ala. 96

" . . . There are many equitable considerations involved in an application to punish a party for a violation of an injunction while the case was in fieri. The motives of the party obtaining the injunction, the good or bad faith, and the conduct of the party charged with its violation are all considered. If other courts should intervene, and determine collaterally that there has been the violation of an injunction, the consequences which are to result could not be adjusted as a court of equity would adjust them . . . ."

It may be further stated that the evidence exemplified by the file of the injunction suit and all the proceedings therein does not contain either a claim nor a finding of a violation as sought to be shown by plaintiff in this case. The admission of evidence tending to show or infer a violation of the temporary restraining order of the equity court by defendant was error. Such error is not the basis for reversal, as we reverse on other error stated hereafter.

Appellant assigns as error the refusal of the requested affirmative charge. It contends such charge should have been given for two reasons. First, one cannot be deceived by a representation which he knows to be false. Second, the only pecuniary loss shown to have resulted from the representation relied on was that incurred in bringing the suit to restrain foreclosure. We will discuss each contention in order.

Appellant argues that when appellees received the letter of March 23, 1965 advising them that their account was credited or paid from April through August of 1965, they knew that such representation was incorrect for they had not paid such payments. They were therefore not deceived. Instead they did nothing to determine the reason for such representation but rather

chose to benefit therefrom by remaining quiet.

It is the law that one who has knowledge of the falsity of a representation cannot be said to have been deceived thereby. In order to recover for fraud, the representee must have relied upon the false representation, believing it to be true and induced by such belief to act thereon. 37 Am.Jur.2d, Section 223, Fraud and Deceit; Ansley v. Bank of Piedmont, 113 Ala. 467, 21 So. 59. The reliance of the representee must have been reasonable under the circumstances. Whether a party claiming to have been defrauded by a false representation had knowledge of its falsity or reasonably relied on said representation to his detriment are generally questions of fact for the jury. Nelson v. Shelbey Mfg. & Improv. Co., 96 Ala. 515, 11 So. 695.

Plaintiffs here acknowledged that they had not paid the sum sufficient to have caused their mortgage to be paid five payments ahead at the time they received the letter so advising them. They stated they did not know why they received such letter and did not know if a mistake had been made. They stated they made no inquiry. At the same time they stated they had never made payments on a mortgage before and were of limited education and experience. While it may appear they were naive or negligent, such was a question of fact and was properly submitted to the jury.

The second contention of appellant for the giving of the affirmative charge is that the evidence failed to show any damage to plaintiffs resulting from the representation of defendant. Appellant says that the only damage shown by plaintiffs were those incurred in the restraining of the foreclosure and that the right to such foreclosure did not depend upon the default in the five payments that were not paid due to the representation.

The evidence is undisputed that at the time of initiation of the foreclosure, plaintiffs were in default in payment for fire insurance on their property. Such insurance had been paid by appellant and charged against the account of plaintiffs as provided for by the terms of the mortgage. It is equally true that keeping the property insured was one of the conditions or obligations of the mortgage imposed upon plaintiffs. Failure to keep such insurance coverage was ground for declaring default and foreclosure. If there were other default than that of failing to make the five payments, which entitled appellant to foreclose, can it be said that damages of foreclosure were the result of the misrepresentation charged?

There was shown by the evidence that after the letter of February 16, 1971, notifying plaintiffs of default in payments for January and February and the unpaid insurance, that plaintiffs paid the two payments and forwarded a proposal of payments on the insurance to bring it current. Payments were made under the proposal and accepted by the company. Whether such proposal was accepted by appellant and thus right to foreclose for such default was thereby waived appears to be a question for the jury under proper instruction.

We therefore reject appellant's contention that the court erred in refusing the affirmative charge.

Appellant assigns as error the refusal of a requested charge that punitive damages could not be awarded under the evidence. We find the court to have erred in refusing such charge.

Punitive damages may not be recovered in an action for deceit unless the fraud is gross, malicious, oppressive and committed with an intention to injure and defraud. Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909, and cases cited therein.

Our careful consideration of all the evidence convinces us that there is no evidence or reasonable inference therefrom which would justify an award of punitive damages. As previously stated, it was clearly shown how the mistake occurred

which gave rise to the representation made to plaintiffs that their account had been credited with a sum which they had not paid. It is equally clear and undisputed that such mistake was not known to appellant for six years after it was made. It was further clear that after discovery of the mistake, foreclosure was not undertaken until notice was given of default and all reasonable opportunity was given plaintiffs to pay the sums alleged in default. Appellant clearly had several opportunities to have foreclosed for other defaults during the six years subsequent to the error and did not do so. Rather they notified appellees on three occasions of such default and cautioned them of their large equity in the property and the loss to them of foreclosure. No such notices were required under the terms of the mortgage.

■ Foreclosure could have been immediately instituted upon default. Abbott v. So. Cotton Oil Co., 237 Ala. 569, 188 So.2d 68. Plaintiffs charged in their complaint that the representation was made for the purpose of inducing a default for foreclosure. Other defaults did not bring foreclosure but were allowed to be brought current. It can only be reasonably concluded that the representation was innocently and mistakenly made without an intent to injure and defraud. There is no support in the evidence that appellant was guilty of gross fraud as required to award punitive damages.

It is therefore the judgment of this Court that for error in refusing to take from the jury the right to award punitive damages the judgment of the trial court will stand reversed and the cause remanded, unless the appellees shall, within thirty (30) days file a remittitur in accordance with Section 811, Title 7, Code of Alabama 1940, reducing the judgment from $5,000.00 to $150.00. If appellees shall file such remittitur, the judgment will be reduced and affirmed for the sum of $150.00.

Consideration of other error assigned is deemed unnecessary.

Affirmed conditionally.

BRADLEY and HOLMES, JJ., concur.