358 So.2d 151 (1977)
ST. PAUL FIRE & MARINE INSURANCE COMPANY et al.
v.
Shelby ANDERSON.
Civ. 1008.
Court of Civil Appeals of Alabama.
April 6, 1977.
Rehearing Denied May 25, 1977.
*154 W. Harold Albritton, Andalusia, for appellants.
Allen Edward Cook, Andalusia, for appellee.
BRADLEY, Judge.
This is an action to recover damages for a misrepresentation allegedly made by an insurance agent to an insured. A jury returned a verdict for the insured in the amount of $2,500 and all but one of the defendants appeal. The defendants were Mr. George Proctor, Mr. Joe Proctor, The Proctor Agency, Inc., and St. Paul Fire and Marine Insurance Company. Mr. Joe Proctor is not an appellant.
Shelby Anderson, the plaintiff below and appellee here, is a member of the Andalusia Rescue Squad. In 1968 the rescue squad purchased an insurance policy from the St. Paul Fire and Marine Insurance Company, through the Proctor Agency, to cover rescue squad members injured while performing rescue services. In January 1975 while on rescue squad duty Mr. Anderson suffered an injury, later diagnosed as an inguinal hernia, as he was lifting a patient into an ambulance.
Two days after the injury Mr. Anderson discussed whether his injury was covered under the rescue squad policy with either Mr. George Proctor or Mr. Joe Proctor of the Proctor Agency. At that time Mr. Anderson did not know the nature of his injury. Anderson said that Mr. Proctor told him that Anderson was covered under the policy for medical or surgical expense up to a maximum amount of $2,500.
Mr. Anderson then sought medical advice and learned that he had an inguinal hernia which would have to be surgically repaired. Anderson returned to the Proctor Agency for assurance of coverage, since he was unable to find a copy of the rescue squad policy. Anderson claims that Mr. Joe Proctor told him that he was covered under the policy and to have the operation. This statement is the basis of the lawsuit.
Joe Proctor denies telling Anderson that he was covered under the rescue squad policy and to have the operation. Instead, Proctor says he told Anderson to submit the bills for the operation and the Proctor Agency would forward the bills to the insurance company.
Mr. Anderson testified that he would have had the repair surgery "sooner or later," but he scheduled the operation as soon *155 as possible because of medical advice and the Proctors' assurance that the costs would be borne by the insurance company. He said that if he had known at the time that the operation was excluded from coverage under the policy he would have waited to have the operation until after he had made financial arrangements to pay the medical expenses at that time.
After the operation Anderson filed a claim for payment of costs. The claim was processed by a claims adjuster for St. Paul in one of St. Paul's regional offices and a check was issued to Mr. Anderson. However, after the claim reached St. Paul's home office, it was discovered that hernia operations are excluded under the rescue squad policy and the check was cancelled.
Anderson's personal insurance coverage paid some of the medical expenses incurred by him as a result of the rescue squad injury. However $546.06 of the hospital bill remains unpaid and Mr. Anderson has been informed that the hospital intends to take legal action to collect the amount.
The appellants present seven questions for decision.
The first is whether an intent to induce action is an essential element to be proved in an action for misrepresentation under Title 7, Section 108, Code of Alabama 1940 (Recomp.1958), which provides:
"Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud."
The trial court refused to give to the jury the following charge requested by the defendants:
"The Court charges the jury that you cannot return a verdict in favor of the plaintiff unless you are reasonably satisfied from the evidence that the alleged misrepresentations were made to the plaintiff with the intent to induce the plaintiff to act thereon."
When the refusal to so charge was discussed with the trial judge, he stated he did not consider the requested charge to be a correct statement of law and again refused to give the charge.
Neither party disputes that according to decisions of our supreme court it is necessary in an action under this section for the plaintiff to show that the misrepresentation was made with an intent on the part of the speaker to induce the plaintiff to act on the misrepresentation. The language used in the decisions is that the misrepresentation must have been "made to be relied on as an inducement." Hall Motor Co. v. Furman, 285 Ala. 499, 503, 234 So.2d 37, 40 (1970); Standard Oil Co. v. Johnson, 276 Ala. 578, 581, 165 So.2d 361 (1964); Cartwright v. Braly, 218 Ala. 49, 52, 117 So. 477 (1928).
The issue, then, is not whether an intent to induce action is a required element in a suit for misrepresentation; clearly it is. Rather, the question is whether the trial court erred to reversal by refusing to charge the jury as to one element of the plaintiff's cause of action, an element which the jury had to find favorably for the plaintiff in order to hold the defendants liable, where there is evidence as to that element before the jury and there is a verdict for the plaintiff.
The appellants deny that there was evidence that the misrepresentation was made with the intent to induce Anderson to have the hernia operation. They claim that since such evidence was lacking they were injured by the trial court's refusal to give the requested charge. However, Anderson testified that Joe Proctor told him:
". . . by all means go on ahead and have this hernia operation, . . . it's nothing to worry about because my father had just had a hernia operation and there is nothing to worry about."
Although Proctor denied making this statement, Anderson's testimony is evidence of intent to induce action. Furthermore, it appears the jury believed Anderson, rather than Proctor, for they returned a verdict in his favor.
The trial court's failure to state correctly the substantive law was error. In Clayton v. Glasscock, 221 Ala. 3,127 So. 538 (1930), a *156 case on all fours with the one at bar, the plaintiff brought an action for misrepresentation under the predecessor to Title 7, Section 108, supra. The trial court was reversed for refusing to charge that the plaintiff could not recover unless the defendant intended to deceive the plaintiff. For other cases where trial courts were reversed for stating an incorrect principle of law in their jury instructions, see James v. Governor's House, Inc., 284 Ala. 404, 225 So.2d 815 (1969); State Farm Mutual Automobile Insurance Co. v. Dodd, 276 Ala. 410, 162 So.2d 621 (1964); Yates v. De Mo, 270 Ala. 343, 118 So.2d 924 (1960).
Although we believe the trial court erred in its failure to charge the jury on all the elements necessary to warrant a finding for the plaintiff and against the defendants, in this case the refusal to charge on an essential element was not prejudicial and therefore the error is harmless. The case at bar falls within the rule stated in Sibley v. Adams, 56 Ala.App. 572, 324 So.2d 287, cert. den. 295 Ala. 121, 324 So.2d 291 (1975) that error in a jury instruction is ground for reversal unless it affirmatively appears that it was not prejudicial.
It appears to us that the requested charge, had it been given, would have made no difference in the jury's verdict. We cannot conceive that the jury could possibly have found that Joe Proctor did not intend for Anderson to have the hernia operation if the jury believed, as it obviously did, that Proctor told Anderson to go ahead and have the operation. Therefore, it affirmatively appears that the error committed by the trial court was not prejudicial to the defendants, under the peculiar facts of this case.
The second issue raised by appellants is whether the trial court committed reversible error by instructing the jury on a theory not presented by the pleadings or the pre-trial order.
The complaint alleged that the misrepresentation was made (1) wilfully and with intent to deceive, (2) recklessly and without knowledge of the true facts, and (3) grossly and recklessly and without knowledge of the true facts. A pre-trial order stipulated that the issues were correctly framed by the pleadings. The trial court granted a directed verdict as to the first count, and the case went to the jury on the two remaining counts. The trial court instructed the jury by reading the provisions of Title 7, Section 108, supra, which require the misrepresentation to have been made (1) recklessly and without knowledge, or (2) by mistake and innocently. Defendants objected on the dual grounds that the complaint did not allege the misrepresentation had been made by mistake or innocently and the pre-trial order limited the plaintiff's action to the pleadings.
Appellants maintain for this alleged error the trial court is due to be reversed, citing Harris v. Whitehead, 46 Ala.App. 516, 244 So.2d 603 (1971), wherein we said:
"There can be no justification for submitting to the jury oral or written charges pertaining to a cause of action not presented by the pleadings." 46 Ala. App. at 519, 244 So.2d at 605.
The Harris case, however, was decided prior to the adoption of Rule 15(b), ARCP.
Rule 15(b) provides in pertinent part as follows:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. . . . An amendment shall not be refused under subdivision (a) and (b) of this rule solely because it adds a claim or defense, changes a claim or defense, or works a complete change in parties. The Court is to be liberal in granting permission to amend when justice so requires."
The committee comments add: ". . . Under the rule where evidence is introduced or an issue raised with the express consent of the other *157 party, or without objection from him, the pleadings `shall' be deemed amended to conform to such evidence."
In the case at bar, no request was made to amend the pleadings to include the innocent mistake claim, but neither was objection made to the introduction of evidence showing that the misrepresentation was made innocently and by mistake. In fact the defendants themselves introduced evidence showing the misrepresentation was made innocently and by mistake. Joe Proctor, under questioning by his lawyer, testified that he did not know the extent of coverage under the Andalusia Rescue Squad policy at the time of either conversation with Anderson. Likewise under direct examination by plaintiff's lawyer, the claims adjuster for St. Paul stated he did not know the extent of coverage under the policy at the time he issued the check, but "assumed" hernia operations were covered. Although defendants' lawyer cross-examined, no mention was made of this particular testimony.
The facts of the case at bar fall precisely within the rule in Rafield v. Johnson, 294 Ala. 235, 314 So.2d 695 (1975), where the supreme court said:
"At oral argument, counsel for Rafield contended that the judgment did not conform to the pleadings. Regardless as to whether this is true or not, the judgment is supported by the evidence. No objection to evidence outside the scope of the pleadings has been called to our attention. Thus, it would appear that the issues presented by the evidence and decided by the trial judge were tried with the implied consent of Rafield. Under these circumstances the failure, if there be such, of the evidence to conform to the pleadings does not affect the result of the trial of these issues. Rule 15(b), ARCP." 294 Ala. at 238, 314 So.2d at 697.
Under this rationale, the trial court in the case at bar did not err. Here the judgment was not based on the innocent mistake count, since it is evident that punitive damages were assessed. The evidence of actual damages was $546.06, yet the verdict was for $2,500. Thus the failure of the evidence to conform to the pleadings did not affect the result of the trial.
In McDuffie v. Hooper, 294 Ala. 293, 315 So.2d 573 (1975), the plaintiff filed suit seeking money due under a partnership agreement. The trial court found that the parties had entered into a joint venture and ruled in favor of plaintiff. The defendant appealed, claiming error because the issue of a joint venture had not been found in the pleadings. The supreme court applied Rule 15(b) to uphold the trial court's action. It was apparent that there was no misunderstanding by the parties as to the theory of the case and that the defendant was equally liable under either theory, since from the evidence the trial court could have found a joint venture or a partnership.
Applying the rationale of McDuffie to the case at bar, we do not consider that there was any confusion at trial as to the issues. The defendants were in no way misled by the evidence, since they themselves offered some of it and did not object to the introduction of the remainder, and the evidence clearly supports the charge to the jury.
We note in passing that the defendants, rather than being prejudiced by the charge, were placed in a better position by the instruction than they would have been without it. Had the jury found the misrepresentation to have been made innocently and by mistake, the defendants would have been liable only for compensatory damages.
The third question is whether either Joe or George Proctor were agents of St. Paul Fire & Marine Insurance Company so that any misrepresentation as to coverage under a policy issued by St. Paul made by either Proctor could be imputed to St. Paul as principal, thereby making St. Paul liable for the misrepresentation. St. Paul's motion for a directed verdict on this ground, i. e. the Proctors were not such agents of St. Paul as they could alter the terms of the policy issued to the Andalusia Rescue Squad, was denied, and the question of agency was submitted to the jury.
*158 The general rule is that the existence and scope of an agency relationship is for the jury to determine where the evidence is in conflict. Treadwell Ford, Inc. v. Wallace, 49 Ala.App. 308, 271 So.2d 505 (1973) (emphasis ours).
There was some conflict in the testimony regarding the Proctors' agency relationship with St. Paul. Joe Proctor testified that neither the Proctor Agency nor any of its employees has authority to change or alter the terms of a policy issued by St. Paul, or to agree to pay claims. The Proctor Agency does not keep copies of policies that have been issued to policyholders.
On the other hand, George Proctor testified that the Proctor Agency has authority to accept applications for St. Paul policies and to collect the premiums. While it has authority to issue binders on some St. Paul policies, it did not have authority to issue a binder on the policy in question because it is a special type policy. The Proctor Agency had authority only to accept the application and premium payments for the rescue squad policy. He also said that the agency did not have authority to otherwise bind St. Paul.
Anderson's position, both at trial and here, is that since the Proctor Agency had the authority to issue binders in certain types of St. Paul policies, the agency could alter the terms of the policy in question so as to bind St. Paul to pay plaintiff for his hernia operation. However, the undisputed evidence is that the Proctor Agency and its agents could only accept the application and the premium payments for the policy in question. The Proctors had no authority to change the terms of the policy issued by St. Paul to the Andalusia Rescue Squad. Under Treadwell Ford, Inc. v. Wallace, supra, the trial court should not have allowed the question of the Proctors' agency relationship to St. Paul to go to the jury.
Furthermore, we are not convinced that even if the Proctors did have authority to issue a binder on the policy in question, which they did not have, it would have followed that this authority encompassed the authority to also alter the terms of the policy issued. The limits of the authority of a special agent, such as the Proctors appear to be, were defined in Security Life and Trust Company v. Galin, 280 Ala. 325, at 328, 193 So.2d 766, at 768 (1966):
"An agent whose authority is limited to soliciting insurance, delivering policies and collecting premiums has no power to change stipulations in a contract of insurance; to do so he must either be a general agent or be specially authorized or his course of dealing to that extent have been ratified expressly or impliedly."
The conclusion compelled by the undisputed evidence is that the Proctors were only soliciting agents for St. Paul in this particular instance and therefore had authority only to solicit the policy and accept the premium therefor. There was no authority reposed in the Proctors by St. Paul to alter the terms of the policy in question, and the Proctors were not such agents as could make St. Paul liable for any misrepresentations they may have been guilty of making. There being a complete lack of evidence binding St. Paul to liability, the trial court should have granted St. Paul's motion for directed verdict. The court's refusal to do so constitutes reversible error with regard to St. Paul.
The other appellants argue that a reversal as to St. Paul requires a reversal of the judgment against them as well on the theory that a joint judgment should be regarded on appeal as an entirety. The Proctors argue that the jury may have been more willing to return a verdict against all the defendants than against only the Proctor Agency or Mr. George Proctor.
This argument was rejected in Sealy v. McElroy, 288 Ala. 93, 257 So.2d 340 (1972), a case strikingly similar to the one here. Although the common-law rule was that a joint judgment had to be regarded as an entirety, in this state the rule has been modified so that where a judgment is joint in form but several in effect, i. e. the interests of the parties against whom judgment is rendered are several and independent, the joint judgment may be reversed as to one *159 or more of the defendants and not as to all. See Alabama Power Co. v. King, 280 Ala. 119, 190 So.2d 674 (1966).
Here St. Paul was implicated only through the actions of the two Proctors. Their liability has been fully litigated and no reversible error infected that aspect of the trial; their interests being independent from that of St. Paul, the judgment against the Proctors will stand unchanged.
The appellants next contend that the preponderance of the evidence is against the verdict and therefore the verdict should be set aside and a new trial granted. The trial court denied the defendants' motion for new trial.
In Kilcrease v. Harris, 288 Ala. 245, at page 252, 259 So.2d 797, at page 802 (1972), our supreme court said:
". . . A jury's verdict, which is presumed to be correct, will not be set aside unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence is against the verdict, and is so decidedly so as to clearly convince the court that it is wrong and unjust. . . . The lower court's refusal to grant a new trial strengthens the presumption in favor of the verdict's correctness.. . . No ground is more carefully scrutinized or rigidly limited than one charging that the verdict is against the weight of the evidence." (Citations omitted.)
In brief, this argument amounts to nothing more than a restatement of issues one, two and four. We have already agreed that with regard to St. Paul there was no evidence to make it bound by the misrepresentation. With regard to the Proctor Agency and Mr. Proctor, the evidence has already been discussed. The question, in essence, was whether the jury believe the Proctors' testimony or Mr. Anderson's testimony. We cannot say that because the jury chose to believe Mr. Anderson the preponderance of the evidence is against the verdict and the verdict is clearly wrong and unjust.
The fifth contention of appellants is that Mr. Anderson failed to prove actual damage resulting from the misrepresentation and therefore there is nothing to support an award of punitive damages.
Pihakis v. Cottrell, 286 Ala. 579, 243 So.2d 685 (1971), and Shafer v. Timmons, 51 Ala. App. 157, 283 So.2d 609 (1973), set forth the rule with regard to damages in an action for misrepresentation or deceit. In order to recover punitive damages for fraud and deceit (and, it follows, misrepresentation), the plaintiff must prove that he or she has suffered actual damages as a result of the fraud. Although the actual damage may be nominal, it must be an actual pecuniary loss. Furthermore, if actual damages can be inferred from the evidence, nominal damages (upon which punitive damages are based) may be awarded even in the absence of proof of compensatory damages. Again, compensatory damage means actual pecuniary loss.
Appellants say that Anderson incurred no expense as a result of the misrepresentation, for he would have had the operation "sooner or later" regardless of coverage under the policy. This position overlooks Anderson's testimony that had he known the policy did not cover hernia operations he would have delayed the operation in order to make financial arrangements to pay for it. Furthermore, Anderson said he had not paid the balance on the hospital bill even in the face of repeated "duns." We think this was evidence of actual pecuniary loss sufficient to support an award of punitive damages. The trial court committed no error in denying the motion for new trial on this ground.
The sixth issue is whether there is insufficient evidence to support the award of punitive damages. The appellants rely on Mid-State Homes, Inc. v. Holt, 52 Ala.App. 415, 293 So.2d 476 (1974), and Universal Brokers, Inc. v. Higdon, 56 Ala.App. 184, 320 So.2d 690 (1975), which held:
"Punitive damages may not be recovered in an action for deceit unless the fraud is gross, malicious, oppressive and committed with an intention to injure *160 and defraud." 52 Ala.App. at 421, 293 So.2d at 482.
The appellants maintain there is no evidence that the misrepresentation was committed with an intent to injure and defraud, and point out that the trial court granted a directed verdict in their favor as to the first count of the complaint, which alleged the misrepresentation was made wilfully and with intent to deceive.
The source of the rule stated in Universal Brokers and Mid-State Homes is Caffey v. Alabama Machinery & Supply Co., 19 Ala. App. 189, 96 So. 454 (1922), cert. den. 209 Ala. 466, 96 So. 459 (1923). There it was said punitive damages are recoverable where the fraud or misrepresentation is:
". . . malicious, oppressive, or gross, the representations being made with a knowledge of their falseness (or so recklessly made as to amount to the same thing), and with the purpose of injuring the plaintiff . . . ." 19 Ala.App. at 193, 96 So. at 457.
This statement has been adopted as the rule and rigidly applied in a long line of cases. See e. g., Hall Motor Co. v. Furman, supra; Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909 (1954); Pettus v. Shafer, 286 Ala. 625, 244 So.2d 573 (1971).
Under this rule it appears that the plaintiff, in order to recover punitive damages, must prove (1) the misrepresentation was malicious, gross or oppressive, and (2) the misrepresentation was made with intent to deceive or injure. The malicious, gross or oppressive nature of the misrepresentation may be proved by showing that the misrepresentation was made with knowledge of the falseness or so recklessly as to amount to knowledge. The question presented here is whether the reckless nature of the misrepresentation will suffice to supply the requisite element of intent to deceive, as well as the first element of maliciousness, grossness and oppressiveness, where there is no evidence of actual intent to deceive.
We conclude the answer to the question should be in the affirmative. In Hall Motor Co. v. Furman, supra, the court discussed the nature of a cause of action for fraud by misrepresentation under Title 7, § 108, supra. The court said that if the misrepresentation of a material fact is made wilfully to deceive, or recklessly without knowledge (emphasis added), such conduct is deceitful in fact. This is the first provision of the statute. The last alternative under the statute deals with fraud made innocently and by mistake. Although the good faith of the party in making the misrepresentation is immaterial to the committing of the offense if the other party acts on the misrepresentation to his or her injury, it is material to the question of damages, for recovery is limited to compensatory damages. The court, by limiting compensatory damages to the last provision of Section 108 implied that if the misrepresentation falls within the first portion of the statute, i. e. was made recklessly and without knowledge, punitive damages may be awarded.
In Ringer v. First National Bank of Stevenson, 291 Ala. 364, 281 So.2d 261 (1973), the court quoted Pihakis v. Cottrell, supra, as stating the rule in Alabama regarding punitive damages for fraud and deceit. To support punitive damages the act must involve malice, wilfulness, or wanton and reckless disregard of the rights of others. There was no mention of intent to deceive, although the complaint alleged intent to deceive and there was evidence of such intent in that case.
Loch Ridge Construction Co. v. Barra, 291 Ala. 312, 280 So.2d 745 (1973), is similar to the case at bar. There a couple purchased a house upon the representation that the house had been built according to Veterans Administration's and Federal Housing Administration's specifications. This representation was made by a sales representative and the president of the defendant construction company on at least two separate occasions and in response to specific and direct questioning on that point. The couple were never shown the plans and specifications of the house and were unaware that they could have obtained the plans and specifications from the Veterans Administration to ascertain for themselves *161 whether the house met Veterans Administration specifications. A year after moving into the house the couple acquired the house plans from the Veterans Administration and learned that the house substantially failed to conform to the minimum building requirements of the Veterans Administration and the Federal Housing Administration.
In upholding an award of punitive damages, the supreme court did not discuss at all whether the representations had been made with an intent to injure. It does not appear whether such intent was alleged in the complaint or whether it was made an issue at trial. The court quoted the rule enunciated in Caffey v. Alabama Machinery & Supply Co., supra, and cited Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484 (1970), which required the misrepresentation to have been made with an intent to injure. However, the statement of the rule applying punitive damages omitted any reference to an intent to injure:
". . . The trier of fact is authorized to award punitive damages where legal malice, willfulness, or a reckless disregard accompanies the invasion of the rights of another." 291 Ala. at 320, 280 So.2d at 751.
If intent to deceive on the part of the defendant may be imputed through the defendant's recklessness in order to establish the offense, it is logical to allow the plaintiff to prove intent to deceive by the same method in order to recover punitive damages. The general rule is that punitive, or exemplary, damages may be awarded whenever the defendant's act is wanton, malicious, or attended with circumstances of aggravation. Norton v. Bumpus, 221 Ala. 167, 127 So. 907 (1930). Punitive damages may be awarded at the discretion of the trier of fact where there has been an award of nominal damages and where legal malice, wilfulness, and a reckless disregard accompanies the invasion of the rights of another. Maring-Crawford Motor Co. v. Smith, supra.
The nature of punitive damages was explained in Alabama Great Southern Railway Co. v. Sellers, 93 Ala. 9, 9 So. 375 (1890):
". . . The true theory of exemplary damages is that of punishment, involving the ideas of retribution for willful misconduct, and an example to deter from its repetition." 93 Ala. at 15, 9 So. at 377.
There is as much reason to deter, through imposition of punitive damages, representations made recklessly without knowledge of the truth as representations made with knowledge of falseness and with intent to deceive. We hold therefore that punitive damages may be awarded where a misrepresentation is made recklessly and without knowledge of the true facts but where there is no evidence that the defendant had actual intent to deceive, when attended by circumstances of aggravation and oppression.
The jury has discretion to impose punitive damages in cases of fraud and deceit, taking into consideration the enormity of the wrong and the necessity of preventing a similar wrong. Treadwell Ford, Inc. v. Leek, 272 Ala. 544, 133 So.2d 24 (1961); Loch Ridge Construction Co. v. Barra, supra.
There is evidence to justify the jury's imposition of punitive damages in this case. Both George and Joe Proctor testified they had no authority to make statements with regard to coverage under policies issued by St. Paul. Mr. Joe Proctor said that he did not make a practice of agreeing to pay claims under a policy the Proctor Agency places, and that he did not in fact know the extent of coverage under the rescue squad policy. Mr. Anderson testified that he was told the hernia operation was covered under the rescue squad policy. It was for the jury to reconcile the testimony. If the jury believed all of this testimony, it is difficult to conclude that the jury abused its discretion in awarding punitive damages.
The final allegation of error raised by the appellants is that the verdict is excessive. They cite Mid-State Homes, Inc. v. Holt, *162 supra; Continental Volkswagen, Inc. v. Soutullo, 54 Ala.App. 410, 309 So.2d 119 (1975); and Hall Motor Co. v. Furman, supra, for the proposition that where punitive damages are improperly included in a verdict in a fraud case, the verdict is excessive. This argument is but an extension of the sixth issue. Our decision with regard to the imposition of punitive damages disposes of this seventh contention.
For the reasons hereinabove stated, the judgment of the trial court is affirmed in part and in part reversed and remanded with direction to enter judgment for and on behalf of St. Paul Fire and Marine Insurance Company.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH DIRECTION.
WRIGHT, P. J., and HOLMES, J., concur.

On Rehearing
BRADLEY, Judge.
The defendants The Proctor Agency and Mr. George Proctor assert that our original opinion is in error in several aspects. We consider a reply to two aspects to be warranted.
The Proctors say we erred in concluding that the reckless nature in which a person makes a misrepresentation is a sufficient substitute for the requisite element of intent to deceive. We have chosen to follow other jurisdictions which so hold.
In Zager v. Setzer, 242 N.C. 493, 88 S.E.2d 94 (1955), the North Carolina court said:
". . . [T]he evidence is sufficient to support the inference that the plaintiff's representation as to the gross weekly income of the former operator was recklessly made, or positively averred when he was consciously ignorant whether it was true or false, and was intended by him and accepted by the defendant and reasonably relied on as a statement of fact by which the defendant was deceived and caused to suffer loss. The evidence tending to show this state of mind is an adequate substitute for proof of scienter." 88 S.E.2d at 95 (citations omitted).
The New York court said in Hadcock v. Osmer, 153 N.Y. 604, 47 N.E. 923 (1897):
". . . Actionable deceit cannot be practiced without an actual intention to deceive, resulting in actual deception, and consequent loss. But, while there must be a furtive intent, it may exist when one asserts a thing to be true which he does not know to be true, as it is a fraud to affirm positive knowledge of that which one does not positively know. Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is actually untrue, he is guilty of falsehood, even if he believes it to be true; and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it, to his injury, the result is actionable fraud. . . . The language of Chief Judge Andrews, in Kountze v. Kennedy, [147 N.Y. 124, 130, 41 N.E. 414] is equally applicable: `One who falsely asserts a material fact, susceptible of accurate knowledge, to be true of his own knowledge, and thereby induces another to act upon the fact represented to his prejudice, commits a fraud which will sustain an action for deceit. This is not an exception to, but an application of, the principle that actual fraud must be shown to sustain such an action. The purpose of the party asserting his personal knowledge is to induce belief in the fact represented; and if he has no knowledge, and the fact is one upon which special knowledge can be predicated, the inference of fraudulent intent, in the absence of explanation, naturally results.' The rule is the same in other states and in England. Thus, in [Chatham] Furnace Co. v. Moffatt, 147 Mass. 403,18 N.E. 168, the court said: `The charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made as of the party's own knowledge, which is false, provided the thing stated is not merely *163 matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive. The fraud consists in stating that the party knows the thing to exist, when he does not know it to exist; and if he does not know it to exist he must ordinarily be deemed to know that he does not. Forgetfulness of its existence after a former knowledge, or a mere belief of its existence, will not warrant or excuse a statement of actual knowledge.' "47 N.E. at 923-24.
We consider the case at bar to fall within this line of cases. Joe Proctor said he did not know the extent of coverage under the rescue squad policy and that the Proctor Agency did not even have a copy of the policy in the office. There was no evidence that Proctor made any effort to ascertain the extent of coverage before responding to Anderson's request for information. Yet Proctor told Anderson he was covered for the medical procedure in question, knowing that Anderson was relying on the truth of his answer. The principles of law stated in Zager v. Setzer, supra, and Hadcock v. Osmer, supra, with regard to the mental element required to establish the offense of misrepresentation apply with equal validity to the mental element required to impose punitive damages.
Finally the Proctors say that we erred in our main opinion by referring to Joe Proctor as a defendant below and ask that we delete our reference to him as a party defendant.
The record contains a pre-trial order, signed by the trial judge on May 12, 1976, which states as follows:

"ORDER ON PRE-TRIAL HEARING
"This cause coming on to be heard on a regular pre-trial hearing, and all parties being present in person or by counsel, the following action was thereupon taken:
"1. The following pleadings and amendments were allowed:
"2. It was agreed by all of the parties that the following are all of the issues in controversy in this cause:
"The Plaintiff amends his complaint by adding the words, `and Joe Proctor', following the name `George H. Proctor', and the Defendants refile their answer to the amended complaint.
"It is stipulated that the issues are correctly framed by the pleadings.
"It is therefore ORDERED by the Court that all of the above-named allowances and agreements be and the same are hereby binding upon all parties in the above-styled cause, unless this order be hereafter modified by order of the Court.
 "Done this 12th day of May, 1976
 s/ F. M. Smith
 Circuit Judge"
Since George Proctor's name appears in the style of the case on the complaint as a defendant and in the request for summons of the defendants, and since throughout the complaint George Proctor is referred to as a defendant, and since the defendants found it necessary to refile their answer to the complaint as amended, we concluded that Joe Proctor had been added as a party defendant. Furthermore, it did not appear that the intent of the order was to modify only the facts alleged in the complaint, since two days earlier a motion to amend the facts had been granted. The record does reflect that the trial judge, in his oral charge to the jury, said:
". . . And should you find against all three of the Defendants, that is St. Paul Fire and Marine Insurance Company or whatever its name is and the Proctor Agency and George Proctor as a Defendant, the form of your verdict would read as follows: . . . .If you should find from the evidence that the Plaintiff is entitled to recover of any one of the three Defendants, but is not entitled to recover from the other two or if you find from the evidence that he is entitled to recover from two of the Defendants but not from the third one, the form of your verdict would be: . . . ."
If the judge's oral charge is to be considered as a dismissal of Joe Proctor as a *164 party defendant (we have been unable to find any other place in the record where it is suggested that Joe Proctor is not a defendant) then he is not a defendant; however, if there was no intention to remove him as a party defendant, then, according to the pre-trial order, he remains a defendant.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
HOLMES, J., concurs.
WRIGHT, P. J., not sitting.