**P & S BUSINESS MACHINES, INC.,**
**Plaintiff-Appellant,**

v.

**OLYMPIA U.S.A., INC., a corporation,**
**and Robert Morris,**
**Defendants-Appellees.**

No. 82–7135.

United States Court of Appeals,
Eleventh Circuit.

June 24, 1983.

Costello & Stott, Leo E. Costello, Birmingham, Ala., for plaintiff-appellant.

Cabaniss, Johnston, Gardner, Dumas & O'Neal, L. Vastine Stabler, Jr., Lee E. Bains, Jr., Birmingham, Ala., for defendants-appellees.

Freeman, Atkins & Coleman, Robert C. Goldberg, Chicago, Ill., for amicus Nat. Office Mach. Dealers Ass'n.

Before FAY, HENDERSON and HATCHETT, Circuit Judges.

PER CURIAM:

This is an appeal from the granting of the defendants' motion for a directed verdict during the second trial of a fraud claim under Alabama law. In the first trial the jury returned a verdict for the plaintiff for $3,000,000 which was set aside by the trial judge. We reverse the judgment entered for the defendants and order a new trial on both liability and damages.

## BACKGROUND

This case came to federal court after removal from state court in Alabama based on diversity of citizenship.

The suit by P & S Business Machines, Inc. ("P & S") against Olympia U.S.A., Inc. ("Olympia") alleged fraud and deceit. P & S was a dealer of office machine products in Birmingham, Alabama in 1975 when Steve Phillips, owner of P & S, met Bob Morris, the district sales manager for Olympia. Mr. Phillips had been seeking an arrangement with a business machine producer giving him an exclusive dealership in the Birmingham area.

After the meeting between Mr. Morris and Mr. Phillips, P & S did become a dealer of Olympia products in the Birmingham area. The relationship continued amicably until 1981 when three top P & S employees resigned and opened Action Business Machines under an Olympia franchise set up by Mr. Morris.

Mr. Phillips contends that, over the years, several misrepresentations were made by Mr. Morris and Olympia. These representations were allegedly made before and after the arrangement between P & S and Olympia was formed. While the allegations are

numerous, the most important of the misrepresentations were these:

1. It was company policy that Olympia would not "set up" present employees of Olympia dealers with new franchises;

2. It was company policy that Olympia would not discuss new dealerships with present employees of existing dealerships without the owner's knowledge;

3. It was company policy that Olympia would remain loyal to existing dealers in all matters concerning new franchises in the area; and

4. P & S would be the only Olympia dealer in the Birmingham area as long as they did a good job.

P & S contends that it did the following things relying on the misrepresentations:

1. Mr. Phillips allowed close business and social contacts between his employees and Mr. Morris;

2. P & S stopped selling competitive lines of products;

3. P & S spent time and money promoting the Olympia name in the Birmingham area;

4. P & S sought to have local schools teach their typing classes with Olympia machines to promote Olympia sales in the future; and

5. P & S bought many troublesome products from Olympia, resulting in losses to P & S, for the purpose of remaining Olympia's sole dealer in the Birmingham area.

In all, P & S sought to recover compensatory and punitive damages totaling $8,243,716.

At the first trial both sides presented full evidence and the jury returned a general verdict in favor of the plaintiff for $3,000,000. The trial judge then granted the defendants' motion for a new trial on the grounds that the damage award was "grossly excessive" and that the verdict was "obviously the result of bias, passion or prejudice." We do not review this finding in the traditional sense for two reasons. First, the jury instructions in the first trial did not make it clear that common-law fraud in Alabama is a cause of action independent of any contract. Second, the jury's verdict did not specify how much of the award was compensatory or punitive.[1]

■ In the second trial, the judge granted the defendants' motion for a directed verdict because the plaintiff had failed to prove actual damages by showing lost profits as measured by Action Business Machines profits. Because it is not necessary under Alabama law to limit damages to lost profits in a fraud action, we reverse the trial court's granting of the motion for a directed verdict.

We reverse and remand for a new trial consistent with theories of common law fraud in Alabama.

## DISCUSSION

This case is properly before our court pursuant to 28 U.S.C. § 1332 providing for diversity jurisdiction. Alabama law controls. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### I. The Directed Verdict

■ During the second trial, the trial judge stated several times that the measure of damages in this case was lost profits to be proved by evidence of the profits of Action Business Machines. See, e.g., trial transcript p. 153. This is not a correct damage formulation under Alabama fraud law. In Alabama, one injured by fraudulent representation is entitled to recover all damages which were in the contemplation of the parties or which were either necessary or natural and proximate consequences of the fraud. Ala.Code § 6–5–101 (1975); *Fidelity and Casualty Co. v. J.D. Pittman Tractor Co.,* 244 Ala. 354, 13 So.2d 669 (1943); *Jackson Co. v. Faulkner,* 55 Ala. App. 354, 315 So.2d 591 (1975). All natural-

---

1. Our reading of the record and briefs makes it clear that the attorneys for neither side provided clear guidance as to the nature of the claims made, defenses raised or appropriate Alabama law.

ly resulting damages are recoverable, but they must be actual damages proved at trial. *Shafer v. Timmons,* 51 Ala.App. 157, 283 So.2d 609 (1973). Lost profits may be included in properly recoverable damages in a fraud action, but the jury must also decide if evidence shows that other damages have been incurred and that they proximately resulted from the defendant's actions.[2]

In this case there was considerable evidence introduced by P & S that, if believed, could support a recovery in multiple areas. It is true that proof of actual damages is an essential element of a fraud claim. See e.g., *First Virginia Bankshares v. Benson,* 559 F.2d 1307 (5th Cir.), rehearing denied, 564 F.2d 416 (5th Cir.1977), cert. denied, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978); *Earnest v. Pritchett-Moore, Inc.,* 401 So.2d 752 (Ala.1981); *Kuhlman v. Keith,* 409 So.2d 804 (Ala.1982). But it was error in this instance to dismiss P & S's suit because they failed to show lost profits as measured by Action Business Machine's profits. There is no such restriction on the measure of damages for fraud in Alabama and this dismissal must be reversed. The record contains evidence sufficient for submission to a jury which must be properly charged on all elements of allowable damages.

## II. The First Trial

We also find it inappropriate to reinstate the jury verdict from the first trial but rather remand for a new trial.

While it is possible to base a claim on fraud in the inducement to contract, the claim in this case was based on misrepresentations independent of the contractual relationship, or so-called "common law" fraud. "There is a clear distinction between a cause of action on contract and one based on fraud and deceit. In the former, recovery is based upon the express liability assumed by a person in his contract, and in

the latter, upon the liability incurred for a violation of the duty of honesty and fair dealing which the law enjoins upon one in his transactions with another." 37 Am. Jur.2d, Fraud and Deceit, § 6. While a contract may be the basis for the relationship and duty from which fraud arises, it is not even necessary that a contractual relationship exist for recovery to be possible in a claim of fraud. *Mid-States Homes, Inc. v. Startley,* 366 So.2d 734 (Ala.Civ.App.1979).

The Alabama Code defines the cause. Misrepresentations of a material fact made wilfully to deceive, or recklessly without knowledge and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.

Ala.Code § 6-5-101 (1975).

Fraudulent deceit is also defined by the code.

(a) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.

(b) A deceit within the meaning of this section is either:

(1) The suggestion as a fact of that which is not true by one who does not believe it to be true;

(2) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4) A promise made without any intention of performing it.

In the first trial, the judge's instructions incorrectly stated the principles of fraud in Alabama by linking the claim to the contractual relationship between P & S

---

**2.** Lost profits refers to such proved losses by plaintiff corporation and not Action Business Machines. While evidence of the business activities and sales of Action Business Machines

may be relevant, the item of damage to be considered is the lost profits, if any, by plaintiff.

and Olympia.[3] This is not a claim based on fraud in the inducement to contract and those instructions led to an improper verdict. On remand, the jury should be charged on the elements of fraud as set forth in the above statutes and case law of Alabama. See e.g., *Brown-Marx Associates, Ltd. v. Emigrant Savings Bank,* 703 F.2d 1361 (11th Cir.1983).

## III.   Punitive Damages

Punitive damages may be recovered in a fraud action under Alabama law if the fraudulent misrepresentation was malicious, oppressive or gross, made with knowledge of its falseness, or so recklessly made as to amount to the same thing, and made with the purpose of injuring the plaintiff. *Hall Motor Co. v. Furman,* 285 Ala. 499, 234 So.2d 37 (1970). In determining whether to award punitive damages, the jury is to consider the enormity of the wrong and the necessity of preventing a similar wrong. *St. Paul Fire & Marine Insurance Co. v. Anderson,* 358 So.2d 151 (Ala.Civ.App.1977).

In this case the jury's verdict did not state what portion of the award was punitive or compensatory. This form of verdict ($3,000,000 here) makes meaningful review impossible. On remand, the jury should be asked to separate the two kinds of damages.

The case is REMANDED for a new trial.

---

**3.** For example, "this case is based not upon breach of the dealer's agreement but upon fraud and deceit upon which the plaintiff relied *in entering into that agreement in the beginning.*" Trial transcript p. 654; "if the plaintiff has reasonably satisfied you that the defendant promised that the defendant would not enfranchise another dealer of its products in the plaintiff's trade area ... and in reliance [the plaintiff] *entered into an agreement* to become and remain a dealer of the defendant's products then the plaintiff would be entitled to recover damages." *id.* This characterization probably led the trial court to limit damages to lost profits—the proper measure in certain contract cases.